**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTER DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **STEVEN BURNS and SUTTIYA WANADEE, H/W,** | **CIV. NO.** |
| 3559 Sugan Road, Apt. B | |
| New Hope, Pennsylvania 18938 | |
| | |
| **Plaintiffs** | **JURY TRIAL DEMANDED** |
| | |
| **v.** | |
| | |
| **COUNTY OF BUCKS** | |
| c/o Central Bucks County Correctional Facility | |
| 1730 South Easton Road | |
| Doylestown, Pennsylvania 18901 | |
| | |
| **And** | |
| | |
| **CENTRAL BUCKS REGIONAL POLICE DEPARTMENT** | |
| 229 North Broad Street | |
| Doylestown, PA 18901 | |
| | |
| **And** | |
| | |
| **BUCKS COUNTY DEPARTMENT OF CORRECTIONS** | |
| c/o Central Bucks County Correctional Facility | |
| 1730 South Easton Road | |
| Doylestown, Pennsylvania 18901 | |
| | |
| **And** | |
| | |
| **DAVID L. KRATZ, DIRECTOR OF CORRECTIONS** | |
| c/o Central Bucks County Correctional Facility | |
| 1730 South Easton Road | |
| Doylestown, Pennsylvania 18901 | |
| | |
| **And** | |

**JAMES M. COYNE,**
**DEPUTY DIRECTOR OF**
**CORRECTIONS**
c/o Central Bucks County Correctional
Facility
1730 South Easton Road

**And**

**DAVID M. GALIONE, WARDEN**
c/o Central Bucks County Correctional
Facility
1730 South Easton Road

**And**

**CARL METELLUS,**
**SUPERINTENDENT**
c/o Central Bucks County Correctional
Facility
1730 South Easton Road

**And**

**KEVIN M. ROUSSET,**
**SUPERINTENDENT**
c/o Central Bucks County Correctional
Facility
1730 South Easton Road
**And**

**JOSHUA ALBILLAR, CORPORAL**
c/o Central Bucks County Correctional
Facility
1730 South Easton Road
Doylestown, Pennsylvania 18901

**and**

**TIMOTHY CONBOY,**
**CORRECTIONS OFFICER**
c/o Central Bucks County Correctional
Facility
1730 South Easton Road
Doylestown, Pennsylvania 18901

2

**And**

**JOHN DOES 1-20**
c/o Central Bucks County Correctional
Facility
1730 South Easton Road
Doylestown, Pennsylvania 18901

**Defendants.**

## ORIGINAL- CIVIL ACTION COMPLAINT

Plaintiffs, Steven Burns and Suttiya Wanadee, husband and wife (hereinafter "Plaintiffs"), by and through their attorneys, Anapol Weiss, claim of Defendants (collectively "Defendants"), separate sums upon causes of action wherein the following are true:

1.      This action arises from the use of excessive force by guards at a holding cell at the Bucks County Regional Police Department ("CBRPD") on Steven Burns, while he was detained there on July 26, 2022 as well as the failure to render proper medical care and aid to Mr. Burns when he was subsequently housed at the Central Bucks County Correctional Facility ("the Facility"). The subject events unfolded when Mr. Burns was abruptly pushed to the ground by Defendant Corporal Joshua Albillar at a time when Burns was not provoking or applying force towards Albillar. As a result, Mr. Burns' head violently struck the floor forcing him to lose consciousness and leaving a trail of blood on the ground.

2.      He was transported by ambulance to a nearby hospital where he underwent emergency surgery requiring the removal of a portion of his skull. He has consistently experienced seizures ever since.

3.      During his time in custody, following the July 26, 2022 assault, Mr. Burns did not receive necessary medical treatment and continued to be treated cruelly by Bucks County and

Bucks County Department of Corrections ("Bucks County DOC") staff members, agents, and other representatives.

4.      The excessive force applied to Mr. Burns was a foreseeable and direct result of the conduct of Bucks County, the CBRPD, and Bucks County DOC, and the individual defendants, who authorized the use of excessive and unconstitutional force on Mr. Burns.

## THE PARTIES

5.      Plaintiffs Steven Burns and Suttiya Wanadee, husband and wife, are adult residents of the Commonwealth of Pennsylvania. They presently reside at 3559 Sugan Road, Apt. B, New Hope, PA 18938.

6.      Defendant County of Bucks ("Bucks County") is a county, political subdivision, and governmental entity duly organized and existing under the laws of the Commonwealth of Pennsylvania with its principal place of business located at the Bucks County Courthouse, 55 East Court Street, Doylestown, Pennsylvania 18901.

7.      Bucks County operates the holding cell within the CBRPD building located at 229 North Broad Street, Doylestown, PA 18901.

8.      Bucks County also operates the Correctional Facility at 1730 South Easton Road, Doylestown, Pennsylvania 18901("the Facility").

9.      Bucks County is a "person" subject to suit within the meaning of 42 U.S.C. § 1983 and *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658 (1978).

10.     The County receives federal funding for law enforcement activities from the Pennsylvania Commission on Crime and Delinquency ("PCCD") Law Enforcement Recruitment Incentives Solicitation Program, Law Enforcement De-escalation programming.

11.    At all times relevant hereto, Bucks County was acting by and through its duly authorized employees, agents, and or administrators within the Bucks County DOC and at the CBRPD building and the Facility who, at all times relevant hereto, were acting within the course and scope of employment, under color of state law, and in accordance with Bucks County's policies, practices and customs.

12.    Defendant CBRPD is an executive and enforcement function of the County.

13.    Defendant Bucks County Department of Corrections is operated and funded by Bucks County ("the Bucks County DOC"). The Bucks County DOC is a criminal justice agency that is part of the executive branch of the county government serving all municipal and state law enforcement authorities employing over 340 people in various types of employment.

14.    Defendant David L. Kratz is an adult individual and a citizen of the State of Pennsylvania with a business address of 1730 South Easton Road, Doylestown, Pennsylvania 18901. Defendant Kratz is the Director of the Bucks County DOC and employed by Bucks County, the CBRPD and/or the Bucks County DOC. At all times relevant hereto, he was acting under the color of state law and under the authority provided to him as the Director working out of the Facility.

15.    Defendant James M. Coyne is an adult individual and a citizen of the State of Pennsylvania with a business address of 1730 South Easton Road, Doylestown, Pennsylvania 18901. Defendant Coyne is the Deputy Director of the Bucks County DOC and employed by Bucks County, the CBRPD and/or the Bucks County DOC. At all times relevant hereto, he acted under the color of state law and under the authority provided to him as the Deputy Director working out of the Facility.

16.     Defendant David M. Galione is an adult individual and a citizen of the State of Pennsylvania with a business address of 1730 South Easton Road, Doylestown, Pennsylvania 18901. Defendant Galione is the Warden of Bucks County DOC and employed by Bucks County, the CBRPD and/or the Bucks County DOC. At all times relevant hereto, he was acting under the color of state law and under the authority provided to him as the warden working out of the Facility.

17.     Defendant Carl Metellus is an adult individual and a citizen of the State of Pennsylvania with a business address of 1730 South Easton Road, Doylestown, Pennsylvania 18901. Defendant Metellus is the Superintendent of the Bucks County DOC and employed by Bucks County, the CBRPD and/or the Bucks County DOC. At all times relevant hereto, he was acting under the color of state law and under the authority provided to him as the Superintendent working out of the Facility.

18.     Defendant Kevin Rousset is an adult individual and a citizen of the State of Pennsylvania with a business address of 1730 South Easton Road, Doylestown, Pennsylvania 18901. Defendant Metellus is the Superintendent of the Bucks County Department of Corrections and employed by Bucks County, the CBRPD and/or the Bucks County DOC. At all times relevant hereto, he was acting under the color of state law and under the authority provided to him as the Superintendent working out of the Facility.

19.     Defendant Corporal Joshua Albillar is an adult individual and a citizen of the State of Pennsylvania with a business address of 1730 South Easton Road, Doylestown, Pennsylvania 18901. Defendant Albillar is a corporal employed by Bucks County, the CBRPD and/or the Bucks County DOC. At all times relevant hereto, he was acting under the color of state law and under the authority provided to him as a corporal working out of the Facility.

20.     Defendant Corrections Officer T. Conboy is an adult individual and a citizen of the State of Pennsylvania with a business address of 1730 South Easton Road, Doylestown, Pennsylvania 18901. Defendant Comboy is a corrections officer employed by Bucks County, the CBRPD and/or the Bucks County DOC. At all times relevant hereto, he was acting under the color of state law and under the authority provided to him as an officer working out of the Facility.

21.     At all times relevant hereto, Defendant Bucks County owned, operated maintained, controlled and was otherwise responsible for the CBRPD and the Facility.

22.     Defendants John Does 1-20 are fictitious designations. At all times relevant hereto, the Doe Defendants are adult individuals, and upon information and belief citizens of the State of Pennsylvania who, despite diligent inquiry, are currently unidentified. John Does 1-20 were acting under color of state law as corrections officers or supervisors employed by Defendants Bucks County, CBRPD and/or the Bucks County DOC to work at the Facility. Upon information and belief, John Does 1-20 are identified on documentation regarding the use of force applied to Steven Burns and appear on videotapes in the possession of Defendant Bucks County displaying said uses of force. Plaintiff has made diligent inquiry to secure said videos through a Criminal History Record Information Act Request in accordance with 18 Pa. C.S. § 9152. Although Mr. Burns does not know their names at that time, he will seek leave to amend the Complaint within 20 days of their identities having been discovered.

23.     At all relevant times hereto, Bucks County, by and through the CBRPD and Bucks County DOC, was responsible for the recruitment, hiring, training, supervision, discipline, retention, termination, and promotion of those working out of the CBRPD, and the Facility including of the individual defendants named herein.

24.     All the above defendants are referred to as "Defendants" in the aggregate.

25.     Defendants Kratz, Coyne, Galione, Metellus, Rousset, and John Does 1-10 are referred to, collectively, as the "Supervisory Defendants."

26.     The Supervisory Defendants, together with Defendants, Albillar, Conboy and John Does 11-20 are referred to, collectively, as the "Individual Defendants."

## JURISDICTION AND VENUE

27.     This Court has subject matter jurisdiction over this matter pursuant to 27 U.S.C. §1331 and 1343(a)(3) as Plaintiffs' claims arise under the Constitution of the United States and 42 U.S.C. § 1983.

28.     Plaintiffs also invoke the Court's supplemental jurisdiction over all state law claims pursuant to 28 U.S.C. § 1367(a), as they form part of the same case or controversy, and the exceptions to supplemental jurisdiction provided in §§ 1367(b) and (c) are inapplicable.

29.     The Court has personal jurisdiction over all Defendants because Defendants are, upon information and belief, domiciled in Pennsylvania.

30.     Venue is proper in this Court pursuant to 28 U.S.C § 1391 (b) because one or more of the Defendants reside in this District and all Defendants are residents of the Commonwealth of Pennsylvania. Additionally, the events or omissions giving rise to the claim occurred in this Judicial District.

## FACTUAL BACKGROUND

### A.  The Unwarranted and Senseless Assault of Steven Burns at the CBRPD and Subsequent Failure to Render Timely Emergency Medical Aid

31.     The preceding paragraphs are incorporated by reference as though fully set forth herein.

32.     Plaintiff Steven Burns was 36 years of age as of July 26, 2022. He was and remains the owner of Razor Tree and Lawn Care Incorporated in Warminster, Pennsylvania.

33.     At all material times, Mr. Burns was married to Plaintiff Suttiya Wanadee.

34.     Mr. Burns has a known history of alcohol consumption and has been diagnosed with bipolar disorder.

35.     On the evening of July 26, 2022, upon suspicion of DUI, Mr. Burns was arrested by Solebury Township Police Department Officer Meghan Klosterman and taken to the CBRPD holding cell located at 229 North Broad Street in Doylestown, Pennsylvania.

36.     Upon information and belief, he was known to have a blood alcohol level over the legal limit upon his arrest and arrival at the CBRPD.

37.     He was taken to a holding cell there.

38.     Following his arrival at the CBRPD and placement inside of a holding cell, EMTs were called to bring Plaintiff to the hospital due to his alcohol consumption.

39.     He was significantly less intoxicated by this time and was acting calmly and rationally.

40.     Several officers entered the holding cell to advise Plaintiff that he was being brought to the local hospital for examination and then departed from the cell.

41.     Thereafter, Defendant Albillar came to the cell door and opened it approximately half to three-quarters of the way.

42.     Upon information and belief, other officers, including Defendant Conboy, as well as several of the John Does defendants were present and in close proximity to Plaintiff and Defendant Albillar during this interaction between Defendant Albillar and Plaintiff.

43.     In response to the door having been partially opened, Mr. Burns slowly and calmly began moving toward Defendant Albillar without provocation. At no point as he walked towards the door did he pose a threat to Defendant Albillar or any other individuals.

44.     Nonetheless, in abrupt response, Defendant Albillar entered the cell and sharply and with great force pushed Plaintiff causing Plaintiff to fall entirely backwards and violently strike his head on the holding cell ground. As a direct result of the impact, he sustained a skull fracture. He was then left non-responsive with a pool of blood gathered around his head. He remained helpless lying on the ground without any medical aid until EMS arrived and secured him for transport to the hospital.

45.     Upon information and belief, both Defendant Albillar's body camera and surveillance camera from the Correctional Facility captured this outrageous unprovoked attack.

46.     Although nearby officers observed Defendant Albillar enter the cell, they took no measures to stop him or assist Plaintiff prior to the arrival of EMS and Mr. Burns' transportation to Abington Memorial Hospital.

47.     Mr. Burns never threatened, provoked, assaulted, or resisted Defendant Albillar or any other officer nor did he refuse to obey orders or fail to comply with orders prior to Defendant Albillar's entry into his cell. In fact, no orders were given at that time.

48.     Upon information and belief, numerous officers within the CBRPD and Bucks County DOC were already investigated or actively being investigated for the use of excessive force, including the unprovoked assault of detainees.

49.     On May 11, 2023, Mr. Burns was sentenced to four months of work release and eight months restrictive probation.

50.     Despite the fact that he was incarcerated and only consumed the medications proscribed to him to treat his traumatic brain injury, on June 2, 2023, Mr. Burns was given a drug test which he was told came back "toxic." His medically necessary medications were then withheld leading him to suffer a seizure on June 8, 2023.

51.     Mr. Burns' cellmate told Mr. Burns that he hit his head on a metal desk and was lying on the floor unconscious following this particular seizure. It took the guards a long time to respond to the scene where he was finally administered his prescribed medications. At *no point* in time was he taken to the hospital to address the June 8, 2023 seizure.

52.     Similarly, on June 15, 2023, Mr. Burns was once more told his urine test came back positive although he was *not* under the influence of any alcohol or drugs. He was nonetheless placed into the restrictive housing unit, referred to amongst inmates as "the hole," for 30 days for "misconduct." During this time, visitors were not permitted, and he was unable to speak to family or friends.

53.     Those responsible for supervising Mr. Burns at the Facility failed to administer the full dosage of his seizure medication. Consequently, on August 8, 2023, he suffered another seizure for which he was neither treated nor taken to the hospital.

54.     In response to these events, Mr. Burns was not met with a quick or concerned response to his emergent medical needs.

55.     He submitted a grievance to the Facility related to the fact that he was not taken to the hospital following these seizure events.

56.     Despite their knowledge of his traumatic brain injury, Mr. Burns was also forced by guards at the Facility to sleep on a top bunk where he was fearful of falling and suffering additional injuries. The decision to house him at a top bunk utterly disregarded his medical conditional to his detriment, further exacerbating the anxiety and fear he consistently felt at the Facility.

57.     While Ms. Burns relied on Bucks County, the CBRPD, and Bucks County DOC staff for guidance, protection, care, and rehabilitation, Corporal Albillar, and his subordinates and

superiors alike as well as those overseeing him at the Facility, took advantage of his vulnerable physical and mental state.

58.     For many years, detainees within the holding cells of the CBRPD and the Facility have been victimized and retaliated against by staff, and the CBRPD consistently failed (and still refuses) to address this subculture, which allows those that wish to exert their power to cause great harm, to the detriment of detainees, like Ms. Burns, who rely on them for guidance, protection, care, and rehabilitation.

59.     Bucks County, the CBRPD and the Bucks County DOC were acutely aware of the grave dangers and the high incidence of the severe pervasiveness of the use of excessive force and the need for increased implementation of emergency medical aid by staff within the justice system, particularly at the CBRPD and Facility. Yet, despite several recent investigations, more persons in custody, including Mr. Burns, suffered great, tragic, and irreversible harm.

### B. **Mr. Burns' Pain & Suffering was a Direct Result of the Assault**

60.     As a result of the July 26, 2022 assault, Defendant Burns suffered severe and life-altering injuries which dramatically affect his ability to function, work, and live out a normal life.

61.     Upon arrival at Abington Memorial Hospital on July 26, 2022 by ambulance from the CBRPD, a vascular neurologist performed an emergent five-hour operation which removed a portion of Mr. Burns' skull because of brain swelling and to stop the bleeding. He was placed in a medically induced coma for approximately one week and in intensive care for eight days thereafter. He remained inpatient for an additional eight days after he was released from intensive care and prior to being discharged with Valproic Acid to assist with seizures, a known side effect of traumatic brain injuries.

62.     He unfortunately had to return to the same vascular surgeon for a cranioplasty in January 2023.

63.     Since the assault, Mr. Burns has experienced numerous seizures and been forced to undergo many additional hospitalizations.

64.     He has also been told that he cannot perform his usual occupational duties as business owner and operator in the landscaping and tree service business as they would be detrimental to his traumatic brain injury. He has likewise experienced consistent uncontrollable trembling of the hands.

65.     On December 22, 2023, Mr. Burns sustained a seizure on the job while a passenger in a co-worker's vehicle looking at driveways to provide quotes for snow removal services. This seizure led to a two-day hospitalization.

66.     Mr. Burns is no longer able to travel, dine out, go camping, jet ski, or engage in any form of active outdoor activities. In his words, he feels as if he is a shell of the person he once was.

67.     As of May 31, 2024, Mr. Burns has experienced over thirteen seizures every two to three months, leading to several ambulance rides and stays at various hospitals. Many times, family and friends have been nearby not knowing if he will come out of the seizures alive.

68.     Following each seizure, he awakens in a complete fog and utterly exhausted for days. He is frequently required to see numerous physical therapists, neurologists, surgeons, and other physicians.

69.     Mr. Burns' wife, Suttiya Wanadee, has consistently cared for Mr. Burns since the assault. She has also been left to act as the primary income generator for the couple and assumed many of the responsibilities Mr. Burns previously carried out both in and outside of the home.

70.     The quality of life for Plaintiffs has dramatically decreased as a direct result of the assault.

71.     Additionally, Mr. Burns suffered multiple mental health injuries as a direct result of this assault including post-traumatic stress disorder, anxiety, depression, and increased mental illness.

72.     Mr. Burns is also constantly overwhelmed with great feelings of distrust, guilt, shame, humiliation, and embarrassment.

73.     Upon his discharge from the Facility, Plaintiff was in immediate need of psychological and other treatment to help him try to begin to heal from the great physical and emotional trauma he experienced at the CBRPD and the Facility.

74.     As a direct and proximate result of Defendants' unlawful, unreasonable, unnecessary and unconstitutional conduct, Mr. Burns was caused to suffer physical and mental pain and suffering; fear, fright, and terror; mental anguish; pain and suffering from being needlessly forced to the ground sustaining a skull fracture, and the need for a craniotomy as well as a lifelong seizure disorder.

75.     He faced subsequent deprivation of the medication needed to prevent seizures and the failure to treat seizures with medically necessary hospital care; worsening physical illness, brain damage, seizure disorder, and mental anguish and depression; temporary unresponsiveness, lack of consciousness and an inability to speak; increasingly worsened medical prognosis and mental health; embarrassment; disfigurement; and loss of life's pleasures.

C. **The County's Failure to Properly Hire, Train, Retain and Supervise Officers to Ensure Compliance with the Bucks County, CBRPD, and Bucks County DOC Excessive Force Policies**

76.     Defendants Bucks County, the CBRPD and the Bucks County DOC failed to properly train and/or failed to have a proper policy in place regarding the training of correction officers on the use of force as well as interacting with those in custody, including those with a history of alcohol addiction and/or a history of mental illness such as bipolar disorder.

77.     Likewise, Defendants Bucks County, David Kratz, James Coyne, David Galione, Carl Metellus, Kevin Rousset, and John Does 1-10 failed to properly train and supervisor Corporal Albillar, CO Conboy, and others to safely monitor the Facility, oversee detainees in holding cells and render of emergency medical treatment.

78.     The mistreatment of Plaintiff was objectively serious—the use of potentially deadly unreasonable force and the failure to render prompt medical aid is not acceptable under any circumstances and demonstrates that the defendants ignored and severely overlooked the serious risks posed to detainee safety by not having adequate protections in place for detainees to ensure they were not subject to the use of excessive force and when they are in danger or facing life threatening injuries that immediate medical assistance is provided.

79.     As a result of Defendant Bucks County, James Coyne, David Galione, Carl Metellus, and Kevin Rousset's failure to adequately train Corporal Albillar, CO Conboy, and other surrounding officers whose identities are presently unknown, Corporal Albillar used excessive force and neither CO Conboy nor the other nearby officers intervened to prevent the use of same. In turn, Plaintiff sustained a severe and permanent life altering traumatic brain injury as well as other physical, psychological, and emotional injuries.

D.  **The Assault Upon Mr. Burns was a Direct Result of Bucky County, CBRPD, and Bucks County DOC Policies, Practices, Customs and Procedures Regarding Interactions with Detainees**

80.     Bucks County, CBRPD and the Bucks County DOC have formal excessive force policies in place. However, Bucks County and its leadership has engaged in a deliberately indifferent pattern and practice of ensuring that the CBRPD and Bucks County DOC officers adhere to that policy.

81.     Importantly, in November 2020, following the death of George Floyd and related civil unrest, and after months of conversations between law enforcement officials, Bucks County adopted new use-of-force guidelines.[1]

82.     The Bucks County DOC maintained this policy, promulgated by the Bucks County Prison Administrational and Operations Department, and approved by the Director of Correction. Specifically, the County maintained the Use of a Force Policy revised in 2020 approved by the Director of Corrections, Christopher Pirolli.

83.     These guidelines require officers to use de-escalation techniques whenever feasible and an officer to intervene when another office is using excessive force. They also require officers to render medical aid following the use of force, and to complete written reports following use-of-force incidents.[2]

84.     While these guidelines were adopted in 2020, a February 2024 NAACP Report on Policing study examining the policies and practices of thirty-nine different law enforcement

---

[1] *See* https://www.phillyburbs.com/story/news/2020/11/18/bucks-county-police-adopt-countywide-use-force-guidelines/6338581002/

[2] *See id.*

agencies in Bucks County revealed serious gaps in how those departments carried out the policy and need for reform.[3]

85.    Alarmingly, the NAACP study found that 46% of the departments had not fully adopted the use-of-force guidelines or produced records regarding the enforcement of same.

86.    Of particular import, the use of force information provided by the CBRPD and Bucks County DOC was heavily redacted and only provided after appeal and crisis response programs were only partially in place.

87.    At the same time, on July 26, 2022, upon information and belief, Defendants Bucks County, David Kratz, James Coyne, David Galione, Carl Metellus, and Kevin Rousset were responsible for supervising Defendants Corporal Albillar and CO Conboy as well as other individual John Doe Defendants to ensure they adhered to these guidelines of the Facility, including the Bucks County use of force policies as well as those pertaining to the rendering of emergency medical aid.

88.    Likewise, Defendants Bucks County, David Kratz, James Coyne, David Galione, Carl Metellus, and Kevin Rousset were policy and decisionmakers makers at the CBRPD and Facility in July of 2022 and responsible for detainee safety but failed to maintain proper safety protocol to ensure detainee safety.

89.    Defendants Bucks County, the CBRPD, and Bucks County DOC, David Kratz, James Coyne, David Galione, Metellus, and Kevin Rousset failed to create, implement, and enforce policies, practices, and procedures to ensure Plaintiff's safety.

---

[3] https://www.naacpbucks.org/post/naacp-bucks-county-report-on-policing-shows-need-for-reforms-starting-with-competent-data-collectio

90.    Bucks County, the CBRPD and the Bucks County DOC were acutely aware of the grave dangers and the high incidence of the severe pervasiveness of excessive force by law enforcement imposed on detainees. Yet, despite several recent investigations, more individuals in custody, including Mr. Burns, suffered great, tragic, and irreversible harm.

91.    Likewise, prior to Mr. Burns' detention, there was a pattern and practice of utilizing excessive force on mentally ill patients who faced hurdles in complying with directives and failing to train, monitor, and retain corrections officers as well as failing to amend, revise, or replace policies, procedures and practices so that those officers were made aware of how to appropriately interact with detainees with mental illnesses.

92.    The aforementioned conduct demonstrates that Defendants ignored and blatantly disregarded the risk to detainee safety posed by failing to have adequate protections in place to ensure excessive force is not utilized and appropriate medical attention is afforded to those in custody.

93.    This type of deliberate indifference for the safety and wellbeing of detainees, manifesting a practice, policy, and/or a de facto custom of a lack of responsibility for the care and custody of detainees with minimum safety measures in place to protect them, is captured by the following snapshot of cases. These are just a few of the cases filed over the past several years involving the use of excessive force and failure to render emergency medical care and treatment to those in custody:

- In *Corbin v. Bucks County et al.*, 2:23-cv-02784, the plaintiff died as a result of narcotics usage because of the failure to implement proper screening and pat down searches on another inmate who brought narcotics into the Facility;

- In *Mubarak Alexander v. Vingless*, *et al.*, 21-cv-4633, guards assaulted the plaintiff while on suicide watch and strapped to a restraint chair. He was not subsequently rendered medical treatment;

- In *Adams v. Bucks County et al.*, 23-cv-1178, guards failed to intervene while the plaintiff was being attacked by other inmates and he was subsequently denied medical care;

- In *Stringer v. Bucks County et al.*, 2:22-cv-01525, excessive force was applied to a mentally ill inmate, including the use of O.C. spray and forcibly removing her from her cell and placing her in a restraint chair, at a time when she did not pose a danger to either other inmates or guards;

- In *Convington v. Bucks County et al.*, 2:19-cv-03063, there was a use of excessive force by a guard and an immediate need for surgery to address a fractured collarbone which was not provided;

- In *Medzadourian v. Bucks County et al.*, 2:19-cv-2752, the plaintiff was injured during transport from court to the Facility and the failure to render prompt medical aid led to paralysis and the need for surgery;

- In *Deems v. Phillips*, 18-cv-2035, the sick plaintiff was punched in the face and his head slammed against the wall while he was grabbed by the neck. His head was forced to hit the point of the bed causing tooth fractures and shoulder, neck, and back injuries were also sustained; and

- In *Yarnall v. Bucks County et al.*, 2:16-cv-01291, the plaintiff was not rendered proper medical treatment and suffered a fatal cardiac arrest by undergoing an overly rigorous detoxification regime.

94.     These examples evince a pattern and practice of deliberate indifference towards the well-being and safety of those in custody and the substantial danger resulting therefore embedded into the culture of the CBRPD, Bucks County, and Bucks County DOC, of which Defendants were aware for many years.

95.     Outlining these past instances not only: (1) highlights the intimate knowledge of the workings inside Bucks County, the CBRPD and the Bucks County DOC as well as the Facility but also (2) illustrates just how preventable the tragedy that Mr. Burns endured truly was, (3) reveals Defendants' great deliberate indifference to Mr. Burns' protection and safety; and also (4) provides introspection on the predominant subculture that shaped these correctional officers'

perceptions about the power imbalance which led them to believe they could exert the unnecessary and excessive use of force.

## COUNT I: EXCESSIVE AND UNREASONABLE FORCE IN VIOLATION OF THE FOURTH, EIGHTH, AND FOURTEENTH AMENDMENTS

### PLAINTIFF STEVEN BURNS V. DEFENDANTS

96.     Plaintiff incorporates herein by reference the preceding paragraphs of this Complaint as if fully set forth herein.

97.     The Fourth, Eighth and Fourteenth Amendments to the United States Constitution are designed to protect Plaintiff from physical abuse and unreasonable or excessive force from Defendants. These amendments also required Defendants to establish policies and practices to protect Plaintiff from known harms and known patterns of constitutional deprivations.

98.     Defendants failed, with deliberate indifference, to provide a safe custodial setting for Plaintiff, by failing to properly train, supervise and discipline staff and failing to appoint the proper individuals to a board of advisors for adequate unbiased, and independent management, as required by state law. As a proximate result of Defendants' policies, practices, and customs, the CBRPD, Bucks County, and Bucks County DOC staff, including Corporal Albillar, Officer Conboy and the other Individual Defendants, subjected Plaintiff to excessive and unreasonable force, a failure to protect him from harm, and other abuses as alleged in this Complaint.

99.     Defendants violated Plaintiff's Fourth, Eighth and Fourteenth Amendment rights when they physically, verbally, and psychologically abused him and took no action to prevent or stop such abuse despite their knowledge and being on notice of the frequent use of excessive force at the CBRPD building and the Facility.

100.    The force used in each of these instances was objectively unreasonable, malicious, sadistic, intended to cause harm, and without any legitimate penological purpose.

101.    Defendants served an exclusively public function and acted or failed to act under the color of state law.

102.    Defendants' acts and omissions as set forth in the preceding paragraphs of this Complaint shock the conscience, deprived Plaintiff of his Fourth, Eighth and Fourteenth Amendment rights to be protected from physical, mental, and psychological abuse and neglect and unreasonable or excessive force, and caused Plaintiff grave physical, emotional, psychological, and other harm.

103.    The acts and omissions by Defendants, as described in the preceding paragraphs of this Complaint, were the direct and proximate cause of Plaintiff's damages and injuries and Defendants are therefore liable to Plaintiff under 42 U.S.C. § 1983 and the Fourth, Eight and Fourteenth Amendments.

## COUNT II: 42 U.S.C. §1983 – FAILURE TO INTERVENE

### PLAINTIFF STEVEN BURNS V. DEFENDANTS

104.    Plaintiff incorporates herein by reference the preceding paragraphs of this Complaint as if fully set forth herein.

105.    By their conduct and under color of state law, Defendants Bucks County, the CBRPD and the Bucks County DOC, and their individual agents acting within the scope of their employment with Defendants, had opportunities to intervene on behalf of Plaintiff, Steven Burns, to prevent and stop the assault the occurred at the CBRPD holding cell and to render appropriate medical care by administering appropriate dosages of the seizure medication he needed following the assault and by having him examined by an appropriate medical professional either during or following the two different seizures he experienced at the Facility.

21

106.     Defendants were able to prevent these egregious violations of Plaintiff's clearly established constitutional right to be free from unreasonable and excessive force and cruel and unusual punishment but, with deliberate indifference, declined to do so.

107.     Defendants failed, with deliberate indifference, to properly train and supervise staff, to thoroughly investigate claims of abuse, and to intervene to prevent further abuses, to provide a safe custodial setting as required by state law. This deficient training failed to take into consideration Plaintiff's diagnosis of bipolar disorder and the need to administer essential medications to prevent seizures while in custody.

108.     As a proximate result of Defendants' policies, practices and customs, the staff at the CBRPD and the Facility, Defendants, including Corporal Albillar acting under color of state law, subjected Plaintiff to excessive and unreasonable force, a failure to protect him from harm, and other abuses alleged in this Complaint.

109.     Defendants' failures to intervene violated Plaintiff's clearly established constitutional right to be free from unreasonable and excessive force and cruel and unusual punishment as guaranteed under the Eighth and Fourteenth Amendments. No reasonable employee/agent of Defendants would have believed that deliberately failing to intervene and thereby permitting such abuse to occur, was lawful.

110.     Defendants' acts and omissions, as described in the preceding paragraphs of this Complaint, were the direct and proximate cause of Plaintiff's damages and injuries and Bucks County, the CBRPD, and the Bucks County DOC, Corporal Albillar and the other individual and Supervisory Defendants are therefore liable to him under 42 U.S.C. § 1983.

111.     Defendants knew, or should have known, that their conduct would result in Plaintiff's abuse and damages.

## COUNT III: 42 U.S.C. §1983 – DEPRIVATION OF RIGHTS BY VIRTUE OF A SPECIAL RELATIONSHIP

### PLAINTIFF STEVEN BURNS V. DEFENDANTS

112.    Plaintiff incorporates herein by reference the preceding paragraphs of this Complaint as if fully set forth herein.

113.    As set forth herein, this is a civil rights action brought pursuant to 42 U.S.C. § 1983 that challenges the constitutionality of the actions by Defendants that resulted in severe initial and subsequent injuries to Plaintiff.

114.    At all times relevant hereto, Defendants were all "persons" and were acting under "color of state law" pursuant to 42 U.S.C. §1983 by providing care, custody, and/or control over Plaintiff.

115.    Defendants' constitutional torts are not governed or limited in any way by 42 Pa.C.S. §8541, *et seq.*, or 42 Pa.C.S. § 8521, *et seq.*

116.    The specific harms to which Defendants exposed Plaintiff were foreseeable and direct in that Defendants knew that allowing continuous and regular abuse to occur to Plaintiff and other detainees under Bucks County, the CBRPD and the Bucks County DOC control would result in severe and lasting harm to Plaintiff.

117.    In direct contravention and in violation of  Pennsylvania statutes as set forth above, and, upon information and belief, in violation of the CBRPD, Bucks County, and Bucks County DOC's own rules, regulations, and policies, Defendants recklessly and willfully subjected Plaintiff to the physical and psychological harms described herein, even though such harms were foreseeable.

118.    At all times material hereto and upon information and belief, Defendants adopted and enforced rules, regulations and policies for their management and supervision of detainees placed in custody.

119.    At all times relevant hereto, a "special relationship" existed between Defendants and Plaintiff, who was a detainee in their care, custody, and control.

120.    Upon information and belief, a "special relationship" existed between Plaintiff and the aforesaid Defendants for purposes of 42 U.S.C. § 1983, as Plaintiff was placed in their care as a detainee, and that care was custodial in nature, and resulted in the deprivation of Plaintiff's liberty, privacy, and bodily interests.

121.    Defendants, while acting under color of state law, unlawfully, and/or intentionally, unreasonably, willfully, maliciously, and/or with deliberate and/or reckless indifference to Plaintiff's rights, violated 42 U.S.C. § 1983 and deprived Plaintiff of his rights as guaranteed under the Fourth and/or Fourteenth Amendments to the United States Constitution, similar provisions of the Pennsylvania Constitution, Federal Law, State Law, and/or local law in that these Defendants without lawful basis caused the aforesaid injuries and damages to Plaintiff as described in this Civil Action Complaint, in violation of the aforesaid guaranteed rights as follows and upon information and belief by:

   a.   Failing to adhere to acceptable standards for good and reasonable detention placement;

   b.   Negligently, carelessly, and recklessly placing Plaintiff in contact with staff/agents of Defendants when they knew or should have known of the staff/agent's violent propensities and dangers to others;

c. Failing to properly and timely remove/release/terminate staff members from their positions after concerning events occurred;

d. Failing to exercise reasonable care with respect to Plaintiff's care in Defendants' care custody and control both at the CBRPD and subsequently at the Facility;

e. Failure to properly screen, train, and supervise employees and agents which allowed the harms suffered by Plaintiff to occur;

f. Permitting and/or otherwise causing Plaintiff to be exposed to the harms and dangers within the CBRPD and Facility as described herein, despite the dangers being known and obvious;

g. Permitting and/or otherwise causing Plaintiff to be exposed to foreseeable physical, psychological, and emotional abuse, particularly in light of his prior medical background;

h. Failing to adequately protect Plaintiff from, physical assault, and psychological abuse, at the hands of their own employees/agents;

i. Failing to remove Plaintiff from the CBRPD and/or the Facility despite the awareness of the environmental conditions of the facility and the abuse perpetrated by employees/agents on detainees like Plaintiff;

j. Failure to enforce codes, regulations, and policies with respect to proper custody of detainees;

k. Such other deliberately indifferent, reckless, and willful and wonton conduct resulting in the violation of Plaintiff's rights that shall be revealed through discovery prior to trial.

122.    Defendants' aforesaid conduct, initiated under color of state law, unlawfully, and/or intentionally, unreasonably, willfully, maliciously, and/or with deliberate and/or reckless indifference violated 42 U.S.C. § 1983 and deprived Plaintiff of his rights as guaranteed under the Fourth, and/or Fourteenth Amendments to U.S. Constitution, similar provisions of the Pennsylvania Constitution, Federal Law, State Law, and/or local law without lawful basis, thus causing injuries and damages to Plaintiff as aforesaid.

## COUNT IV: SUPERVISORY LIABILITY- FOURTEENTH AND EIGHT AMENDMENTS – PURSUANT TO 42 U.S.C. § 1983

### PLAINTIFF V. DEFENDANTS KRATZ, COYNE, GALLIONE, METELLUS, ROUSSET AND JOHN DOES 1-10

123.    Plaintiff incorporates herein by reference the preceding paragraphs of this Complaint as if fully set forth herein.

124.    Defendants Kratz, Coyne, Gallione, Metellus, Rousset, and John Does 1-10 were in supervisory positions at the CBRPD and the Facility and maintained the ability to plan, direct, ratify, and terminate the uses of force on detainees including Mr. Burns.

125.    Defendants Kratz, Coyne, Gallione, Metellus, Rousset and John Does 1-10 were aware of the excessive and unconstitutional use of force on Steven Burns and others before and after him as described herein in violation of Mr. Burns' rights under the Fourth, Fourteenth and Eighth Amendments to the U.S. Constitution and planned, approved, directed, and participated in those uses of force,

126.    It being that Defendants Kratz, Coyne, Gallione, Metellus, Rousset and John Does 1-10 had knowledge that subordinates were engaged in the excessive and unconstitutional use of force upon Mr. Burns, they acquiesced and ratified said use of force.

127.    The conduct of Defendants Kratz, Coyne, Gallione, Metellus, Rousset, and John Does 1-10 in acquiescing, ratifying, condoning, and approving the excessive use of force upon Plaintiff is in direct contravention to his constitutional rights and Plaintiff is therefore entitled to the remedies available under 42 U.S.C. § 1983.

## COUNT V: 42 U.S.C. §1983: DEPRIVATION OF RIGHTS BY VIRTUE OF A STATE CREATED DANGER

### PLAINTIFF STEVEN BURNS V. DEFENDANTS

128.    Plaintiff incorporates herein by reference the preceding paragraphs of this Complaint as if fully set forth herein.

129.    The Fourth, Eighth and Fourteenth Amendments to the United States Constitution are designed to protect Plaintiff from physical abuse and unreasonable or excessive force from Defendants. These amendments also required Defendants to establish policies and practices to protect Plaintiff from known harms and known patterns of constitutional deprivations.

130.    Defendants failed, with deliberate indifference, to provide a safe custodial setting for Plaintiff, by failing to properly train, supervise and discipline staff and failing to appoint the proper individuals to a board of advisors for adequate unbiased, and independent management, as required by state law. As a proximate result of Defendants' policies, practices, and customs, the CBRPD, Bucks County, and Bucks County DOC, including Corporal Albillar and the other Individual Defendants, subjected Plaintiff to excessive and unreasonable force, a failure to protect him from harm, and other abuses as alleged in this Complaint.

131.    Defendants violated Plaintiff's Fourth, Eighth and Fourteenth Amendment rights when they physically, verbally, and psychologically abused him and took no action to prevent or stop such abuse despite their knowledge and being on notice of what was occurring.

132.    The force used was objectively unreasonable, malicious, sadistic, intended to cause harm, and without any legitimate penological purpose.

133.    Defendants served an exclusively public function and acted or failed to act under the color of state law.

134.    Defendants' acts and omissions as set forth in the preceding paragraphs of this Complaint shock the conscience, deprived Plaintiff of his Fourth, Eighth and Fourteenth Amendment rights to be protected from physical, mental, and psychological abuse and neglect and unreasonable or excessive force, and caused Plaintiff grave physical, emotional, psychological, and other harm.

135.    The acts and omissions by Defendants, as described in the preceding paragraphs of this Complaint, were the direct and proximate cause of Plaintiff's damages and injuries and Defendants are therefore liable to Plaintiff under 42 U.S.C. § 1983 and the Fourth, Eight and Fourteenth Amendments.

## COUNT VI: NEGLIGENT FAILURE TO RESCUE

### PLAINTIFF STEVEN BURNS V. DEFENDANTS

136.    Plaintiff incorporates herein by reference the preceding paragraphs of this Complaint as if fully set forth herein.

137.    The negligence and recklessness of Defendants in directly and proximately causing the injuries and damages to Plaintiff, described herein, includes:

   a.   failing to take reasonable and necessary steps to rescue Plaintiff after placing him in a position of harm;

   b.   failing to exercise reasonable and necessary steps to prevent further harm when knowing that Plaintiff was in danger;

   c.   failing to take reasonable and necessary steps to give aid or assistance to Plaintiff to prevent further harm;

28

d.  failing to take reasonable and necessary steps to prevent the inappropriate care of Plaintiff physically, emotionally, and psychologically;

e.  failing to take reasonable and necessary steps to render appropriate medical care and treatment following the July 26, 2022 assault and during his period of incarceration at the Facility;

f.  Violating the duties set forth in the Restatement (Second) of Torts, Sections 314A & 322, as adopted in Pennsylvania.

138.   As a direct and proximate result of Defendants' aforementioned breaches, Plaintiff sustained physical, psychological, and emotional harms and injuries as set forth in the preceding paragraphs.

139.   These incidents were the consequence of the negligence, recklessness and/or intentional acts of Defendants and were due in no manner whatsoever to any act or failure to act on the part of Plaintiff.

**COUNT VII: NEGLIGENT FAILURE TO WARN**

**PLAINTIFF STEVEN BURNS V. DEFENDANTS**

140.   Plaintiff incorporates herein by reference the preceding paragraphs of this Complaint as if fully set forth herein.

141.   At all times material hereto, Defendants owed a duty to Plaintiff and the public to warn about the excessive use of force, failure to render appropriate medical care and aid by staff when they knew or should have known that the staff at the CBRPD and Facility posed a risk to all persons being detained in these institutions.

142.   These defendants and the Individual Defendants breached their duty to warn Plaintiff that Bucks County, the CBRPD, and Bucks County Department of Corrections staff members, specifically corrections officers, posed a risk of harm. Defendants failed to exercise the reasonable care, skill, and diligence that ordinarily prudent county correctional institutions would,

in warning the detainee population and public of the risks and dangers that were occurring at the institutions.

143.    No negligence on the part of the Plaintiff contributed to the happening of the occurrence.

144.    Plaintiffs' injuries and damages as recited herein, occurred directly, and were proximately caused by Defendants' breach of the duty to warn as described herein.

145.    As a direct and proximate result of Defendants' failure to warn the public, CBRPD and Facility populations, including Plaintiff about the dangerous propensities and abuse of detainees by staff, Plaintiff suffered serious injury, has required medical care and attention; has suffered mental anguish, severe pain and agony after being subject to physical, mental, and emotional abuse, and was otherwise injured and damaged.

<u>**COUNT VIII: NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS**</u>

**PLAINTIFF STEVEN BURNS V. DEFENDANTS**

146.    Plaintiff incorporates herein by reference the preceding paragraphs of this Complaint as if fully set forth herein.

147.    The conduct of Defendants Bucks County, the CBRPD, and the Bucks County DOC and their staff, including Corporal Albillar, acting as agents and employees of Defendant Bucks County, CBRPD, and Bucks County DOC in the course and scope of their employment, was extreme and outrageous so as to negligently and recklessly cause severe emotional distress and was the actual, proximate and factual cause of severe emotional distress to Plaintiff.

148.    Corporal Albillar's conduct was executed negligently or recklessly, with conscious disregard of the likelihood of harm and/or severe emotional distress.

149.     Corporal Albillar's conduct was executed in such a way as to inflict emotional distress and to harm Plaintiff, emotionally, mentally, physically, and psychologically.

150.     Defendants Bucks County, the CBRPD and the Bucks County DOC and the Individual Defendants, acting as agents of Defendant Bucks County, by and through the scope of their employment with Defendant Bucks County, CBRPD, and Bucks County DOC engaged in willful, wanton, reckless, and/or intentional acts as described herein, which caused the injuries described herein.

151.     As a result of the Defendants' conduct, as outlined herein, Plaintiff was violated and forced to undergo unprovoked physical abuse and as a result has suffered and continues to suffer great pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, humiliation and loss of enjoyment of life; distrust, anxiety, and distress related to authority figures; depression, nightmares, nervousness, stress, and/or other trauma; mental anguish, humiliation, embarrassment, insomnia, fear, and was prevented and will continue to be prevented from performing Plaintiff's daily activities and obtaining the full enjoyment of life.

152.     Plaintiff also has sustained and will continue to sustain loss of earnings and earning capacity; and/or has incurred and will continue to incur expenses for medical and psychological treatment, therapy, and counseling.

153.     He also faced extreme stress on his marriage, suffered loss of wages and earning capacity, has experienced mood swing related to the medication he takes to avoid seizures.

154.     Along with Ms. Wanadee, Mr. Burns' mother, Susan Burns, has been with Mr. Burns during seizures. She visited him at the hospital after the assault not knowing if he was going

to live or die. She has also held him during seizures to prevent him from succumbing to falls and additional head injuries.

155.    Mrs. Burns has also been a primary caretaker for Mr. Burns following his surgical procedures and lives in great fear regarding Mr. Burns' health and ability to work and care for himself. She has also incurred numerous expenses related to his care.

156.    The aforesaid injuries were due to the willful, wanton, reckless, careless, negligent, and/or intentional acts of Defendants and potentially others. Bucks County, CBRPD, and Bucks County DOC staff members and were in no way caused by any act or failure to act on the part of Plaintiff.

157.    As a further result of the willful, wanton, reckless, careless negligent and/or intentional acts of Defendants, Plaintiff was caused to endure great pain, suffering, humiliation, embarrassment, shame, and self-blame and will continue to suffer into the future.

## COUNT IX: NEGLIGENT HIRING AND RETENTION

**PLAINTIFF STEVEN BURNS V. DEFENDANTS BUCKS COUNTY, CBRPD, BUCKS COUNTY DOC, KRATZ, COYNE, GALLIONE, METELLUS, ROUSSET, AND JOHN DOES 1-20**

158.    Plaintiff incorporates herein by reference the preceding paragraphs of this Complaint as if fully set forth herein.

159.    Defendants Bucks County, the CBRPD and the Bucks County DOC had a duty to provide reasonable supervision of their employees and agents.

160.    Defendants Bucks County, the CBRPD and the Bucks County DOC owed a duty to select and retain appropriate staff, and to reject and/or terminate the employment of possible perpetrators of the excessive use of force, like Corporal Albillar and others, seeking to abuse and exploit members of the community in custody within their facilities.

161.    It was reasonably foreseeable that agents and employees of Defendants Bucks County, the CBRPD and the Bucks County DOC, including Corporal Albillar, would physically abuse the detainee population, especially those positioned like Plaintiff, placed in a temporary holding cell with a mental illness.

162.    Defendants Bucks County, the CBRPD and the Bucks County DOC knew or should have known at the time that Plaintiff was placed at their institutions, that the presence of arrestees with addictions or other vulnerabilities, like Plaintiff, would make employment there enticing to perpetrators of physical assaults seeking to abuse and exploit detainees, including Corporal Albillar.

163.    Defendants Bucks County, the CBRPD and the Bucks County DOC, by and through their agents, servants, and employees, knew or reasonably should have known of Corporal Albillar's dangerous and violent propensities, and/or unfit characteristics for supervising and caring for detainees.

164.    Despite such knowledge, Defendants Bucks County, the CBRPD and the Bucks County DOC breached the duty to provide reasonable supervision of staff members who were in the position of trust and authority as a counselor, supervisor, therapist, technician, teacher, nurse, and/or authority figure, able to commit wrongful acts against Plaintiff.

165.    Defendants Bucks County, the CBRPD and the Bucks County DOC failed to appropriately select and retain Corporal Albillar by, *inter alia*, the following:

      a.  Failing or refusing to supervise Corporal Albillar, and/or having a lack of oversight;

      b.  Failing to perform their obligations and responsibilities owed to those in custody at the CBRPD and at the Facility;

c.  Recklessly, negligently, and/or carelessly failing to adequately observe and supervise Corporal Albillar's interactions with Plaintiff;

d.  Recklessly, negligently, and/or carelessly failing to implement and enforce excessive force and medical aid policies and procedures that allowed the assault and injuries to Plaintiff to occur;

e.  Negligent supervision;

f.  Failing to conduct thorough background checks of staff members;

g.  Failing to contact appropriate references for staff members; and

h.  Failing to promptly and appropriately terminate Corporal Albillar.

166.   As a result of Defendants' conduct, as outlined herein, Plaintiff was violated and forced to undergo a physical assault that left him no choice but to have a portion of his skull removed, enter a medically induced coma, and thereafter to encounter a lifetime of seizures. He has suffered and continues to suffer great pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, humiliation and loss of enjoyment of life; distrust, anxiety, and distress related to authority figures; depression, nightmares, nervousness, stress, and/or other trauma; mental anguish, humiliation, embarrassment, insomnia, and fear.

167.   Plaintiff was likewise prevented and will continue to be prevented from performing Plaintiff's daily activities and obtaining the full enjoyment of life; has sustained and will continue to sustain loss of earnings and earning capacity; and/or has incurred and will continue to incur expenses for medical and psychological treatment, therapy, and counseling.

168.   The harms, injuries, losses, and damages suffered by Plaintiff, and that he continues to suffer, were directly and proximately caused by the negligence, willfulness, wanton,

recklessness, and outrageous conduct of Defendants, individually and by and through their agents, servants, and/or employees, which consisted of, among other things, all conduct described more fully herein.

169.    As a direct and proximate result of negligence, gross negligence, willfulness, reckless, and outrageous behavior and conduct of Defendants, individually acting by and through their agents, servants, and/or employees, Plaintiff has incurred and will continue to incur medical and psychological treatment and services.

170.    Because of the grossly negligent, wanton, and outrageous conduct as set forth in this Complaint Plaintiff is entitled to punitive damages.

## COUNT X: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
## PLAINTIFF STEVEN BURNS V. DEFENDANTS

171.    Plaintiff incorporates herein by reference the preceding paragraphs of this Complaint as if fully set forth herein.

172.    The conduct of Defendants Bucks County, the CBRPD and the Bucks County DOC and their staff member, including Corporal Albillar, acting as an agent and employee of Defendant Muncy/PADOC in the course and scope of his employment as well as that of the other Individual Defendants, was extreme and outrageous so as to intentionally and recklessly cause severe emotional distress, and was the actual, proximate, and factual cause of severe emotional distress to Plaintiff.

173.    Corporal Albillar's conduct was executed intentionally or recklessly, with conscious disregard of the likelihood of harm and/or severe emotional distress.

174.    Corporal Albillar's conduct was executed in such a way as to inflict emotional distress and to harm Plaintiff, emotionally, mentally, physically, and psychologically.

35

175.     Corporal Albillar, acting as an agent of Bucks County, the CBRPD and the Bucks County DOC, and by and through the scope of his employment with Bucks County, the CBRPD and the Bucks County DOC, engaged in willful, wanton, reckless, and/or intentional acts as described herein, which caused the injuries described herein.

176.     As a result of Defendants' conduct, as outlined herein, Plaintiff was violated and forced to undergo a physical assault that left him with severe brain damage and a lifetime of seizures. He has suffered and continues to suffer great pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, humiliation and loss of enjoyment of life; distrust, anxiety, and distress related to authority figures; depression, nightmares, nervousness, stress, and/or other trauma; mental anguish, humiliation, embarrassment, insomnia, and fear.

177.     Plaintiff was also prevented and will continue to be prevented from performing Plaintiff's daily activities and obtaining the full enjoyment of life; has sustained and will continue to sustain loss of earnings and earning capacity; and/or has incurred and will continue to incur expenses for medical and psychological treatment, therapy, and counseling.

178.     The aforesaid injuries were due to the willful, wanton, reckless, careless, negligent, and/or intentional acts of Bucks County, the CBRPD and the Bucks County DOC staff member, Corporal Albillar, and the others that condoned, facilitated, and failed to report his egregious behavior and were in no way caused by any act or failure to act on the part of Plaintiff.

179.     As a further result of the willful, wanton, reckless, careless negligent and/or intentional acts of Bucks County, the CBRPD and the Bucks County DOC staff member, Corporal Albillar, Plaintiff was caused to endure great pain, suffering, humiliation, embarrassment, shame, and self-blame and will continue to suffer into the future.

**COUNT XI: ASSAULT & BATTERY- VICARIOUS LIABILITY**

**PLAINTIFF STEVEN BURNS V. DEFENDANTS BUCKS COUNTY, CBRPD, BUCKS COUNTY DEPARTMENT OF CORRECTIONS, KRATZ, COYNE, GALLIONE, METELLUS, ROUSSET, ALBILLAR, CONBOY AND JOHN DOES 1-20**

180.    Plaintiff incorporates herein by reference the preceding paragraphs of this Complaint as if fully set forth herein.

181.    Defendants Bucks County, the CBRPD and the Bucks County DOC staff and/or agents intended to cause a harmful or offensive contact with the body of Plaintiff, and Defendant Bucks County, the CBRPD and the Bucks County DOC staff and/or agents, including Corporal Albillar, intended to put Plaintiff in reasonable and immediate fear of a harmful or offensive contact by way of his use of excessive forceful pushing.

182.    The actions of Bucks County, the CBRPD and the Bucks County DOC staff and/or agents, including Corporal Albillar, during the course and scope of their employment directly and/or indirectly consisted of misconduct that resulted in harmful or offensive contact including but not limited to:

        a.   Assault, pursuant to Title 18 §§ 2701; 2702 and 2705;

        b.   Assault;

        c.   Battery;

        d.   Other criminal and other violations;

        e.   Negligence;

        f.   Recklessness;

        g.   Gross Negligence;

        h.   Negligent Hiring and Retention;

        i.   Negligent Infliction of Emotional Distress; and/or

j.   Intentional Infliction of Emotional Distress.

183.   The contact with Plaintiff's person was offensive such that it would offend a reasonable person's personal sense of dignity.

184.   The unlawful contact with Bucks County, CBRPD, and/or Bucks County DOC staff member, Corporal Albillar, took place on Bucks County/CBRPD/Bucks County DOC premises owned, operated, and/or maintained by Defendant Bucks County, while Corporal Albillar was an employee of Bucks County/CBRPD/Bucks County DOC, actively working, and within the scope of his employment.

185.   Defendants Bucks County, CBRPD, and/or Bucks County DOC staff member, Corporal Albillar, used his status of authority and power, granted to him by way of his employment with Bucks County/CBRPD/ Bucks County DOC, to unjustifiably attack Plaintiff while he was in a vulnerable state as an arrestee/pre-trial detainee.

186.   As a direct result of the negligence, carelessness, recklessness, wanton, willful, and tortious misconduct of Defendants Bucks County, the CBRPD and the Bucks County DOC and their staff member, Corporal Albillar, Plaintiff was severely and permanently injured.

187.   Prior to or during the physical assault alleged above, Defendants Bucks County, the CBRPD and the Bucks County DOC knew or should have known of the physically abusive and antagonistic tendencies of Corporal Albillar. Defendant Bucks County, CBRPD, and/or Bucks County DOC staff members employees and/or staff, enabled and/or gave Corporal Albillar the opportunity to abuse his power or authority over arrestees, such as Plaintiff, in furtherance of perpetrating unlawful physical acts. Defendants' policies and procedures led to an environment of undetected and/or unreported physical abuse of detainees, like Plaintiff at the CBRPD premises.

188.     Defendants Bucks County, CBRPD, and Bucks County DOC failed to take reasonable steps and failed to implement reasonable safeguards to prevent, eliminate, and/or avoid acts of unlawful physical conduct by Bucks County, CBRPD, and/or Bucks County DOC staff and/or employees.

189.     Furthermore, at all times relevant hereto, Defendants Bucks County, the CBRPD and the Bucks County DOC did not have a system or procedure in place to appropriately supervise and/or monitor their employees to ensure that their employees refrained from assaulting arrestees including, but not limited to, Plaintiff.

190.     As a result of Defendants Bucks County, the CBRPD and the Bucks County DOC's misconduct, as outlined herein, Plaintiff was violated and forced to experience an unprovoked physical attack and as a result has suffered and continues to suffer great pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, humiliation and loss of enjoyment of life; distrust, anxiety, and distress related to authority figures; depression, nightmares, nervousness, stress, and/or other trauma; mental anguish, humiliation, embarrassment, insomnia, and fear.

191.     Plaintiff was also prevented and will continue to be prevented from performing Plaintiff's daily activities and obtaining the full enjoyment of his life; has sustained and will continue to sustain loss of earnings and earning capacity; and/or has incurred and will continue to incur expenses for medical and psychological treatment, therapy, and counseling.

192.     The harms, injuries, losses, and damages suffered by Plaintiff, and that he continues to suffer, were directly and proximately caused by negligence, willfulness, wanton, recklessness, and outrageous misconduct of Defendants Bucks County, CBRPD, and/or Bucks County DOC,

individually and by and through their agents, servants, and/or employees, which consisted of, among other things, all conduct described more fully herein.

193.    As a direct and proximate result of negligence, gross negligence, wanton, willfulness, reckless, and outrageous behavior and conduct of Defendants Bucks County, the CBRPD and the Bucks County DOC, individually acting by and through their agents, servants, and/or employees, Plaintiff has incurred and will continue to incur medical and psychological treatment and services.

194.    Because of the grossly negligent, wanton, and outrageous conduct as set forth in this Complaint, Plaintiff is entitled to punitive damages.

## COUNT XII: LOSS OF CONSORTIUM
### SUTTIYA WANADEE V. DEFENDANTS

195.    Plaintiff incorporates herein by reference the preceding paragraphs of this Complaint as if fully set forth herein.

196.    At all times relevant hereto Suttiya Wanadee was the lawful wife of Mr. Burns.

197.    Defendants' use of, enabling of, ratification of and acquiescence to the use of excessive force as well as the failure to render appropriate medical care and aid to Mr. Burns on the date of the assault and thereafter \caused severe and substantial physical, psychological and emotional harm to Mr. Burns.

198.    As a result of Defendants' conduct and the resulting injuries to Mr. Burns, Ms. Wanadee has observed Mr. Burns experience seizures. Ms. Wanadee was unsure he would make his way out of the seizures alive. She has, likewise, watched him suffer greatly in undergoing two invasive surgical procedures, including a five-hour emergency procedure to remove the left side of his skull and subsequent cranioplasty and cared for him following both operations and consistently thereafter.

199.     She has consistently suffered the loss of services, society, and conjugal affection of Mr. Burns. Because of Defendants' conduct, Ms. Wanadee has been obligated to spend time and money supporting her husband as he treats for his life-altering mental and physical injuries.

## PRAYER FOR RELIEF

WHEREFORE, in consideration of the above claims, Plaintiff Steven Burns and Suttiya Wanadee, request that due to all of Defendants' conduct alleged herein, they be awarded damages including, but not limited to, the following:

a.   compensatory damages for the described losses with respect to each cause of action;

b.   past and future medical expenses, as well as the costs associated with past and future life care;

c.   past and future lost wages and loss of earning capacity;

d.   past and future emotional distress;

e.   consequential and/or special damages;

f.   all available non-economic damages, including without limitation pain, suffering and loss of enjoyment of life;

g.   punitive damages with respect to each cause of action;

h.   reasonable and recoverable attorneys' fees;

i.   costs of action;

j.   and pre-judgment interest and all other interest recoverable; and

k.   Such other and further relief and the Court deems just and proper.

## JURY TRIAL DEMANDED

200.     Plaintiffs hereby demand a trial by jury.

Respectfully submitted,

*/s/ Marni S. Berger*
Kila B. Baldwin, Esq.
Marni S. Berger, Esq.
Jillian S. Casarella, Esq.
ANAPOL WEISS
One Logan Square
130 N. 18th St. Ste. 1600
Philadelphia, PA 19103

Dated: June 18, 2024