IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| STEVEN BURNS and SUTTIYA WANADEE, H/W,<br>   *Plaintiffs,*<br><br>  v.<br><br>BOROUGH OF DOYLESTOWN, et al.<br>   *Defendants.* | Civil No. 24-2690 |

## MEMORANDUM

**Costello, J.**                              **October 7, 2025**

  Plaintiffs Steven Burns and Suttiya Wanadee are husband and wife. This action involves two sets of events related to Burns. First, when Burns was a pretrial detainee at the Bucks County Regional Police Department, he sustained a head injury after a police officer allegedly used excessive force against him. *See* ECF No. 27 ¶¶ 1-5. Second, after Burns was convicted, he served an 84-month sentence at the Bucks County Correctional Facility ("BCCF"). *Id.* ¶¶ 4, 49. During his incarceration at BCCF, Burns suffered seizures purportedly caused by the head injury sustained during his pretrial detention. *Id.* Plaintiffs brought several causes of action against various municipalities, law enforcement agencies, and individual police officers related to both sets of events.

  The instant motion involves the second series of events. Plaintiffs allege that Defendant Bucks County Department of Corrections ("Bucks DOC") failed to render adequate medical aid to treat Burns's seizures while he was incarcerated at BCCF. *Id.* ¶ 4. They brought a claim against Bucks DOC under 42 U.S.C. § 1983. *See id.* ¶¶ 155-65 (Count IV, "Failure to Render Medical Aid"). Bucks DOC moved to dismiss for failure to state a claim upon which relief may be granted. For the reasons that follow, the Court will grant Defendant's motion.

I.      **BACKGROUND & PROCEDURAL HISTORY**

Plaintiffs allege that, while Burns was a pretrial detainee at Bucks County Regional Police Department, an officer used excessive force against him, causing him to fall and strike his head on a holding cell bench and sustain a skull fracture. *Id.* ¶¶ 41-43. Burns was later convicted and sentenced to serve 84 months at BCCF. *Id.* ¶ 49.

Plaintiffs allege that Burns experienced two seizures while incarcerated at BCCF as a result of the head injury. Near the start of his sentence, Burns "hit his head on a metal desk and was lying on the floor unconscious" following a seizure. *Id.* ¶¶ 50-51. Plaintiffs allege that it "took the guards a long time to respond to the scene" and that he was never taken to the hospital for treatment. *Id.* Burns suffered a second seizure a couple months later for which Plaintiffs allege "he was neither treated nor taken to the hospital." *Id.* ¶ 52.

Plaintiffs brought a Section 1983 claim against Bucks DOC for the alleged failure to adequately treat Burns's seizures. *See id.* ¶¶ 155-65. They contend that (1) Bucks DOC was deliberately indifferent to Burns's serious medical needs when no one took him to the hospital to treat his seizures on both occasions, *id.*; and (2) that Bucks DOC has a "pattern and practice of . . . failing to render appropriate medical aid to inmates," *id.* ¶ 106.

Bucks DOC moved to dismiss, raising three arguments. First, that Plaintiffs failed to exhaust administrative remedies as required by the Prison Litigation Reform Act ("PLRA"). *See* ECF No. 41 at 13-15. Second, that Plaintiffs failed to allege a violation of Burns's constitutional rights. *Id.* at 7-10. And third, that Plaintiffs failed to articulate a policy or custom of Bucks DOC that was the proximate cause of Burns's alleged injuries, as is necessary to state a claim for municipal liability under Section 1983. *Id.* at 10-13.

## II. LEGAL STANDARD

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible if the plaintiff pleads facts sufficient to support a "reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Facial plausibility demands "more than a sheer possibility that a defendant has acted unlawfully." *Id.*

Assessing plausibility under *Twombly* requires three steps. *See Connelly v. Lane Const. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016). First, the Court must "take note of the elements the plaintiff must plead to state a claim." *Id.* (alterations omitted) (quoting *Iqbal*, 556 U.S. at 675). Next, the Court must "identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.'" *Id.* (quoting *Iqbal*, 556 U.S. at 679). Finally, the Court must accept as true all "well-pleaded factual allegations," draw all reasonable inferences from those allegations, and "determine whether they plausibly give rise to an entitlement to relief." *Id.* (internal quotations and alterations omitted). "If the well-pleaded facts do nut nudge the 'claims across the line from conceivable to plausible,' the Court must dismiss the complaint." *Lynch v. Tasty Baking Co.*, 23cv4445, 2024 WL 967842, at *2 (E.D. Pa. Mar. 6, 2024) (quoting *Twombly*, 550 U.S. at 570).

## III. DISCUSSION

### a. Administrative Exhaustion

The PLRA provides that prisoners must pursue all avenues of relief available within a prison's grievance system before bringing a federal civil rights action. *See* 42 U.S.C. § 1997e(a) ("No action shall be brought with respect to prison conditions under section 1983 of this title . . .

3

until such administrative remedies as are available are exhausted."). "A prisoner's failure to comply with the exhaustion requirement under the PLRA is an affirmative defense Defendants must plead and prove." *Holton v. Finley*, 21cv737, 2021 WL 7186197, at *8 (M.D. Pa. Dec. 30, 2021), *report and recommendation adopted*, 21cv737, 2022 WL 585148 (M.D. Pa. Feb. 25, 2022) (citing *Small v. Camden Cnty.*, 728 F.3d 265, 268 (3d Cir. 2013)).

Defendant argues that Plaintiffs failed to exhaust their administrative remedies because they did not comply with all the steps in Bucks DOC's grievance procedures. *See* ECF No. 41 at 14-15. Plaintiffs respond that Burns exhausted his administrative remedies by submitting an initial grievance to BCCF and filing a subsequent appeal. *See* ECF No. 42 at 6 (citing ECF No. 27 ¶ 54 (alleging that Burns "submitted a grievance at the BCCF related to the fact that he was not taken to the hospital following" his seizures)); ECF No. 42-1 (grievance appeal form attached to Plaintiffs' opposition to Defendant's motion to dismiss). Defendant does not dispute the authenticity of this record but contends that the appeal involved a different grievance altogether, and submitted an affidavit on reply from a Bucks DOC official certifying that Defendant has no record of Burns submitting a grievance related to the allegations at issue in this action. *See* ECF No. 45 at 1; ECF No. 45-2.

In deciding a motion to dismiss, courts generally consider only the allegations in the complaint, exhibits attached to the complaint, and matters of public record. *Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993), *cert. denied*, 510 U.S. 1042 (1994). Courts may also consider "undisputedly authentic" documents that a defendant attaches to a motion to dismiss if the plaintiff's claims are based on that document. *Id.* In prisoner civil rights cases this typically means that grievance records may be considered but declarations from prison officials cannot be considered without converting a motion to dismiss

4

into one for summary judgment. *See Rinaldi v. United States*, 904 F.3d 257, 261 n. 1 (3d Cir. 2018) (can consider undisputedly authentic grievance records without converting motion); *Berry v. Klem*, 283 F. App'x 1, 3-4 (3d Cir. 2008) (declarations from prison officials are evidentiary materials not properly considered at motion to dismiss stage). Here, that means the Court can consider the appeal document submitted by Plaintiffs but not the declaration submitted by Defendant on reply.

Considering only the complaint and the appeal record, Defendant has not met its burden of pleading failure to exhaust. *See Small*, 728 F.3d at 268 (a defendant has the burden to plead the affirmative defense of failure to exhaust administrative remedies). Plaintiffs allege that Burns submitted a grievance about Defendant's purported failure to take him to the hospital to treat his seizures. *See* ECF No. 27 ¶ 54. Defendant did not make a showing rebutting that allegation other than in the affidavit that cannot be considered at this juncture. *See Berry*, 283 F. App'x at 4; ECF No. 45 at 1-4 (relying entirely on affidavit in making failure to exhaust arguments). Rather than converting the motion into one for summary judgment, the Court declines to dismiss on exhaustion grounds. Defendant may raise this issue at summary judgment after the parties have exchanged discovery.

      **b. Underlying Constitutional Violation**

           i. <u>Construing Plaintiffs' Claim</u>

Plaintiffs label their constitutional claim against Bucks DOC as a Fourteenth Amendment violation. *See* ECF No. 27 ¶¶ 155-65 (Count IV, "Failure to Render Medical Aid," in "Violation of the Fourteenth Amendment Pursuant to 42 U.S.C. § 1983"). However, the Fourteenth Amendment confers a right to adequate medical care for *pretrial detainees*. *Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 581 (3d Cir. 2003). Plaintiffs' claim against Bucks DOC

5

arises out of events that took place when Burns was a *convicted prisoner*. *See* ECF No. 27 ¶¶ 49-60 (alleging failure to render appropriate medical care while Burns was serving 84-month sentence at BCCF). The Eighth Amendment is the source of a convicted prisoner's right to receive adequate medical care. *See Estelle v. Gamble*, 429 U.S. 97, 103-04 (1976) ("deliberate indifference to serious medical needs of prisoners constitutes" cruel and unusual punishment). The Court will therefore evaluate Plaintiffs' claim as an Eighth Amendment violation. *See* Wright & Miller, Construction of Pleadings, 5 Fed. Prac. & Proc. Civ. § 1286 (4th ed.) (courts should construe pleadings based on their substance rather than according to their form or label).

> ii.  Establishing an Eighth Amendment Violation

To establish a violation of the constitutional right to adequate medical care under the Eighth Amendment, a plaintiff must show "(i) a serious medical need, and (ii) acts or omissions by prison officials that indicate deliberate indifference to that need." *Natale*, 318 F.3d at 582.

A medical need is "serious" if it is "one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." *Yoast v. Pottstown Borough*, 437 F. Supp. 3d 403, 437-38 (E.D. Pa. 2020), *aff'd*, No. 22-1960, 2023 WL 4418213 (3d Cir. July 10, 2023) (internal quotations omitted). A medical need is also "serious" where "failure to treat can be expected to lead to substantial and unnecessary suffering." *Schwenk v. Lopez*, 20cv1807, 2020 WL 5632118, at *6 (E.D. Pa. Sept. 21, 2020) (internal quotations omitted).

"A plaintiff properly alleges deliberate indifference where the prison official '(1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment.'" *Id.* at *6 (quoting *Rouse v. Plantier*, 182

F.3d 192, 197 (3d Cir. 1999)). Allegations of medical malpractice and mere disagreement regarding the adequacy of treatment are insufficient to establish a constitutional violation. *Spruill v. Gillis*, 372 F.3d 218, 235 (3d Cir. 2004).

       iii.   Plaintiffs' Eighth Amendment Claim

Bucks DOC does not contest that Burns's brain injury and subsequent seizures constitute a "serious medical need." *See* ECF No. 41 at 9-10 (arguing only that Defendant was not deliberately indifferent to Burns's seizures). Nor could it. Courts in the Third Circuit routinely find that seizures qualify as a serious medical need. *See, e.g.*, *Cyr v. Schuylkill Cnty.*, 22cv0453, 2023 WL 1107879, at *3 (M.D. Pa. Jan. 30, 2023) (crediting plaintiff's allegation of "seizure like activity w/ tremors" in finding plaintiff pleaded serious medical need); *Leal v. Med. Dep't Allegheny Cnty. Jail*, 16cv1590, 2017 WL 11918022, at *3 (W.D. Pa. Apr. 28, 2017) ("Plaintiff's seizure disorder certainly qualifies as a serious medical need" for purposes of stating Eighth Amendment claim); *Welch v. Cape May Cnty. Corr. Ctr.*, 15cv8745, 2016 WL 686255, at *6 (D.N.J. Feb. 19, 2016) (plaintiff's grand mal seizure constitutes serious medical need). Accordingly, Plaintiffs adequately pleaded this element.

Plaintiffs also adequately pleaded deliberate indifference. They offer two allegations to support this element. One fails, but the other is sufficient. First, Plaintiffs allege that Burns hit his head on a metal desk and was lying unconscious following a seizure while in custody at BCCF. ECF No. 27 ¶ 51. They allege that Defendant was deliberately indifferent to Burns's serious medical need because it "took the guards a long time to respond to the scene" and because Burns was never "taken to the hospital to address this seizure." *Id.*

As Defendant points out, Plaintiffs do not allege that Defendant did not treat Mr. Burns for this seizure at all. ECF No. 41 at 9-10. Rather, their position is that the treatment was

7

inadequate because it took Defendant a "long time to respond" and no one took Burns to the hospital. *See* ECF No. 27 ¶ 51; ECF No. 42 at 10-11. Courts in the Third Circuit typically differentiate between cases where officials rendered no medical care at all, and cases where some care was rendered and there is a dispute about the adequacy of that care. The former typically constitutes deliberate indifference, while the latter typically does not. *See, e.g.*, *U.S. ex rel. Walker v. Fayette Cnty.*, 599 F.2d 573, 575-76 & n. 2 (distinguishing between "cases where the complaint alleges a complete denial of medical care and those alleging inadequate medical treatment" and concluding that plaintiff who received no medical attention for ten days, despite obvious signs of severe withdrawal symptoms, adequately pleaded deliberate indifference); *Simonds v. Delaware Cnty.*, 13cv7565, 2014 WL 3030435, at *3 (E.D. Pa. July 1, 2014) ("A prison official's being put on notice of a prisoner's serious medical need and failing to remedy or investigate that need constitutes deliberate indifference. However, any small step taken to investigate or resolve a prisoner's complained of harm will be sufficient to demonstrate that an officer was not acting in a deliberately indifferent manner[.]") (citing *Natale*, 318 F.3d at 582 and *Moore v. Tartler*, 986 F.2d 682, 686 (3d Cir. 1993)).

Courts sometimes find deliberate indifference where some medical aid was rendered, but the prison officials had a reason to know that particular care would be insufficient. *See Schwenk*, 2020 WL 5632118, at *6 (refusal to provide care that prison officials knew to be necessary can constitute deliberate indifference). For instance, in *White v. Napoleon*, one of the plaintiffs had a seizure disorder that was managed using a particular anti-seizure medication. 897 F.2d 103, 107 (3d Cir. 1990). The plaintiff was transferred to a different prison facility and placed under the care of a new physician who refused to prescribe that medication and instead prescribed a different, less effective seizure medication that caused plaintiff's seizures to increase in

8

frequency and severity. *Id.* at 107-11.  The Third Circuit found that the plaintiff pleaded deliberate indifference because the new physician knew the old medication was more effective at treating plaintiff's seizure disorder yet persisted to use the less effective one for no apparent medical reason. *Id.* at 110-11.  Similarly, in *Leal v. Med. Dep't Allegheny Cnty. Jail*, the plaintiff alleged that prison officials knew she had a seizure disorder that required certain daily medications to manage.  16cv1590, 2017 WL 11918022, at *2-3 (W.D. Pa. Apr. 28, 2017).  The officials failed to consistently administer her those medications in proper dosages—causing a severe seizure resulting in hospitalization. *Id.*  The court found that these allegations were sufficient to state a claim for deliberate indifference at the pleading stage. *Id.* at *3.

Unlike the plaintiffs in *White* and *Leal*, Plaintiffs here do not allege that Defendant knew that Burns's seizures required a particular type of treatment—namely, hospitalization—but nevertheless refused that treatment.  *See generally* ECF No. 27.  Plaintiffs assert that Defendants "knew or readily and apparently should have known that Mr. Burns required immediate medical treatment following his seizures." *Id.* ¶ 157.  But this allegation is speculative and conclusory. *See Connelly*, 809 F.3d at 790 ("some allegations, while not stating ultimate legal conclusions, are nevertheless so threadbare or speculative that they fail to cross the line between conclusory and factual") (internal quotations omitted).  Absent any factual information suggesting that Defendant knew that Burns's seizures necessitated hospitalization, or even that hospitalization was medically recommended, this allegation reads more like a dispute about the adequacy of treatment rendered.  *See Spruill*, 372 F.3d at 235 ("mere disagreement as to . . . proper medical treatment" does not amount to a constitutional violation) (internal quotations omitted).  Even construing this allegation in the light most favorable to Plaintiffs, *Iqbal*, 556 U.S. at 679, it is insufficient to plead deliberate indifference.

Second, Plaintiffs allege that two months after the initial seizure, Burns "suffered another seizure at the BCCF for which he was neither treated nor taken to the hospital." ECF No. 27 ¶ 52. Accepting this allegation as true, *Iqbal*, 556 U.S. at 679, this constitutes a failure to render *any* medical care in response to a known serious medical condition. For the reasons articulated above, this is sufficient to plead deliberate indifference. *See supra* at 7-9.[1]

### c. Municipal Liability Under *Monell*

Although Plaintiffs adequately pleaded an underlying constitutional violation, the only way that Bucks DOC can be held liable for that violation is through establishing *Monell* liability. *See Monell v. Dep't of Soc. Servs. of New York City*, 436 U.S. 658, 691 (1978) (a government entity/supervisor cannot be held responsible for the acts of its employees under Section 1983 under a theory of respondeat superior or vicarious liability).

There are two requirements for pleading municipal liability under Section 1983. First, a plaintiff must identify a policy or custom attributable to the municipality. *Hargrove v. City of Phila.*, 671 F. Supp. 3d 595, 605 (E.D. Pa. 2023). A policy is made "when a decisionmaker possess[ing] final authority to establish municipal policy with respect to the action issues a final proclamation, policy or edict." *Natale*, 318 F.3d at 583 (internal quotations omitted). "A custom is an act 'that has not been formally approved by an appropriate decisionmaker,' but that is 'so

---

[1] Plaintiffs include one additional allegation that Burns was "forced to sleep on a top bunk where he was fearful of falling and suffering additional injuries . . . in utter disregard to his known medical condition." ECF No. 27 ¶ 55. Plaintiffs seem to suggest this demonstrates deliberate indifference. *See* ECF No. 42 at 3-4. But it is unclear how Burns's bunk placement relates to Plaintiffs' claim against Bucks DOC for failure to render adequate medical aid. Plaintiffs do not, for instance, suggest that assignment to a bottom bunk was a medically necessary part of his treatment that Defendant refused to provide. *See Veanus v. Northampton Cnty. Prison*, 238 F. App'x 753, 754-55 (3d Cir. 2007) (granting summary judgment in the prison's favor regarding a bunk assignment claim because the plaintiff did not present evidence, "for example, that any other prisoner had been denied a medically-required bunk assignment, had fallen from a top bunk, or had ever complained about this issue").

widespread as to have the force of law.'" *Id.* at 584 (quoting *Bd. of Cnty. Cmm'rs of Bryan Cnty., Ok. v. Brown*, 520 U.S. 397, 417 (1997)).  Second, "[a]fter identifying the policy or custom, the Plaintiff must also show that it was the 'proximate cause' of his injuries by demonstrating a 'plausible nexus' or 'affirmative link' between the municipality's policy or custom and the specific harm sustained." *Hargrove*, 671 F. Supp. 3d at 605 (quoting *Bielevicz v. Dubinon*, 915 F.2d 845, 850-51 (3d Cir. 1990)).  A plaintiff can "establish custom as the proximate cause of an injury by demonstrating the municipality had knowledge of 'similar unlawful conduct in the past, . . . failed to take precautions against future violations, and that [its] failure, at least in part,'" led to the plaintiff's injury.  *Id.* (quoting *Est. of Roman v. City of Newark*, 914 F.3d 789, 798 (3d Cir. 2019)).

      Plaintiffs attempt to establish municipal liability through alleging a custom—namely, failure to render necessary medical aid to inmates.  Plaintiffs' allegations to this effect are entirely conclusory.  They allege a "pattern and practice of the Bucks County DOC and its officials failing to render appropriate medical aid to inmates," ECF No. 27 ¶ 106, and a "pattern and practice of deliberate indifference towards the well-being and safety of those in custody," *id.* ¶ 107.  These statements are not well-pleaded facts; they "simply paraphrase the standard for municipal liability." *Falcey v. Bucks Cnty., Pa.*, 24cv2770, 2024 WL 4205586, at *5 (E.D. Pa. Sept. 16, 2024); *see also id.* (dismissing *Monell* claim against Bucks County that was based on "vague, generalized, and conclusory allegations" of a policy/custom); *Connelly*, 809 F.3d at 789-90 ("*Twombly* and *Iqbal* expressly declined to exclude . . . allegations from a presumption of truth except to the extent they resembled a formulaic recitation of the elements of a claim") (internal quotations and alterations omitted).

Plaintiffs try to overcome the conclusory nature of their allegations by pointing to six other lawsuits against Bucks County. *See* ECF No. 42 at 3 (arguing they adequately pleaded a municipal custom by highlighting "six similar instances of failure to render medical aid that were the subject of lawsuits brought against Bucks DOC"). It is unclear whether Plaintiffs cite to these lawsuits against Bucks County as evidence of the existence of a custom or as evidence of causation. *See id; see also Yoast*, 437 F. Supp. 3d at 439 (causation can be shown by demonstrating that policymakers were aware of similar unlawful conduct in the past but failed to prevent against future violations). Either way, their reliance on these suits is unavailing.

The third lawsuit listed is entirely inapposite because it involves an excessive force claim rather than one for failure to render medical care, and Plaintiffs only bring the latter against Bucks DOC. *See* ECF No. 27 ¶ 106; *id.* ¶¶ 155-65. Three others were dismissed as to Bucks County. *See Medzadourian v. Bucks Cnty., et al.*, 19cv4752, ECF No. 31 (E.D. Pa. Aug. 27, 2020) (fifth suit); *Covington v. Bucks Cnty. Dep't of Corr., et al.*, 17cv11397, ECF No. 73 (D.N.J. Mar. 29, 2019) (fourth suit); *Yarnall v. Bucks Cnty. et al.*, 16cv01291, ECF No. 134 (E.D. Pa. Oct. 24, 2017) (sixth suit).[2]

More fundamentally, Plaintiffs fail to explain how any of the incidents described in these lawsuits are similar to their allegations in this action. "[M]ere recitation of prior complaints against a municipality is not enough to state a claim; the plaintiff must also show how 'those prior incidents deserved discipline and how the misconduct in those cases is similar to that involved in the present action.'" *Izzard v. Cnty. of Montgomery, Pa.*, No. 21cv418, 2021 WL

---

[2] *Mubarak Alexander v. Vingless, et al.*, 21-cv-4633 (E.D. Pa. May 3, 2023) settled (first suit); *Adams v. Bucks County et al.*, 23-cv-1178 (E.D. Pa. Sept. 30, 2024) is still being actively litigated and no findings have been made against Bucks yet with respect to failure to render medical care (second suit).

5639817, at *6-7 (E.D. Pa. Nov. 29, 2021) (quoting *Mariani v. City of Pittsburgh*, 624 F. Supp. 506, 511 (W.D. Pa. 1986)); *see also Thompson v. Se. Pa. Transp. Auth.*, 21cv2286, 2022 WL 17958629, at *4 (3d Cir. Dec. 27, 2022) ("Prior lawsuits alleging [a policy or custom] . . . alone are not enough to state a claim of unlawful custom.").

A "high degree of similarity" is not required at the pleading stage. *Chambers v. City of Phila.*, 23cv0137, 2024 WL 870574, at *7 (E.D. Pa. Feb. 29, 2024). But Plaintiffs' rudimentary summaries of the cases they cite fail to explain how they are relevant to whether Bucks DOC had a "widespread" practice of failing to render medical aid to inmates such that it essentially had "the force of law." *See Bryan Cnty.,* 520 U.S. at 417; *see also Izzard*, 2021 WL 5639817, at *6 (granting motion to dismiss for failure to allege custom based on "mere recitation" of prior lawsuits); *compare to Hargrove*, 671 F. Supp. 3d at 605-07 (crediting plaintiffs' reliance on a series of news stories showing municipality regularly released inmates late at night into a high crime area with no transportation, which was the same conduct alleged by plaintiffs).

Accordingly, Plaintiffs have failed to plead the requisite elements to state a claim for municipal liability against Bucks DOC.[3]

### d. Leave to Amend

Courts have broad discretion to grant leave to amend "when justice so requires." *See* Fed. R. Civ. P. 15(a)(2). The Federal Rules express "'a preference for liberally granting leave to amend' unless 'amendment would cause undue delay or prejudice, or that amendment would be

---

[3] In their response to Defendant's motion to dismiss, Plaintiffs also allege that they state a claim for municipal liability by alleging a failure to train, supervise, or discipline employees. *See* ECF No. 42 at 12-15. But that argument does not match the complaint, which only brings failure to hire, train, retain, and supervise claims against other defendants and only with respect to excessive force—not medical treatment. *See* ECF No. 27 ¶¶ 81- 85, 100.

futile.'" *Riley v. Borough of Eddystone*, 24cv1835, 2024 WL 4137310, at *6 (quoting *Oran v. Stafford*, 226 F.3d 275, 291 (3d Cir. 2000)).  That preference is even stronger in civil rights cases. *See Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.*, 482 F.3d 247, 251-52 (3d Cir. 2007).

Defendant argues that leave to amend would be futile because "Plaintiffs have not, and cannot . . . allege a constitutional violation, nor can they allege any policy or custom that directly led to [Burns's alleged injuries.]" ECF No. 41 at 15.  That is wrong.  While Plaintiffs have not pleaded sufficient facts alleging a policy or custom to survive a motion to dismiss, Defendant has not shown that Plaintiffs cannot make such a showing.  And Plaintiffs have represented that they can present "additional facts" that would "lend further support to [their] *Monell* claims." ECF No. 42 at 15.

Defendant further argues that Plaintiffs should not be granted leave to amend because Plaintiffs have already amended twice.  ECF No. 41 at 15.  But Defendant does not articulate how further leave to amend would cause them prejudice or constitute undue delay.  *See id.*  And though there have been multiple amended complaints, this is the first motion to dismiss filed in this action.  Given the strong preference for liberal amendment, the Court will grant leave here.

## IV. CONCLUSION

Because Plaintiffs do not allege sufficient non-conclusory facts to support an inference that Defendant had a custom of failing to render adequate medical aid to prisoners, the Court will dismiss Count IV against Bucks DOC with leave to amend.  An appropriate Order will follow.

BY THE COURT:

_____
MARY KAY COSTELLO, J.

14