**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **STEVEN BURNS, et al.** | : | |
| **Plaintiffs** | : | |
| **v.** | : | **Civil Action No. 2:24-cv-2690** |
| **CENTRAL BUCKS REGIONAL POLICE DEPARTMENT et al.,** | : | |
| **Defendants.** | : | |

**PLAINTIFFS MOTION FOR PARTIAL SUMMARY JUDGMENT**

Mark V. Maguire, Esq.
**McELDREW PURTELL**
123 S. Broad St. Suite 2250
Philadelphia, PA 19109

Date: September 8, 2026

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **STEVEN BURNS, et al.**<br><br>**Plaintiffs**<br><br>**v.**<br><br>**CENTRAL BUCKS REGIONAL POLICE DEPARTMENT et al.,**<br><br>**Defendants.** | : | **Civil Action No. 2:24-cv-2690** |

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

Plaintiffs, Steven Burns and Suttiya Wanadee, file this Motion to For Summary Judgment as to Count I of Plaintiffs' Amended Complaint (Doc. 27), and would respectfully show this Honorable Court as follows:

## I. INTRODUCTION

On July 26, 2022 Plaintiff Steven Burns' was violently thrown to the ground by Central Bucks Police Department Officer Josh Albillar. This unjustified and unreasonable use of excessive force caused a traumatic brain injury and an ongoing seizure disorder that will require a lifetime of care.

Plaintiff's Complaint alleges in Count I that Officer Albillar's conduct constitutes a violation of the Fourth Amendment. Undisputed video evidence demonstrates that Plaintiff is entitled to judgment as a matter on this claim pursuant to 42 U.S.C. § 1983 and Fed. R. Civ. P. 56(c).

## II. FACTUAL BACKGROUND

1. On July 26, 2022, Plaintiff Steven Burns ("Burns") was arrested by Solebury Township

Police Officers Megan Klosterman ("Klosterman") and Brendan Murphy ("Murphy")for Driving Under the Influence in the area of River Road and Old Mill Road. (Exhibit "A" Solebury Incident Report)

2. Officer Klosterman described Burns as having trouble standing up straight and stumbling when he walked. (Exhibit "A" Solebury Incident Report)

3. Burns was transported to transported to the Central Bucks Police Department ("CBRPD") for processing following his arrest. (Exhibit "A" Solebury Incident Report)

4. When Burns arrived at CBRPD he was obviously unsteady on his feet. After exiting Officer Klosterman's police vehicle with his hands cuffed behind his back, Burns fell and struck his head on the wall of the building. (Exhibit "B" Conboy Body Worn Camera 00:00:01-00:00:39)

5. Officers Klosterman and Murphy walked Burns into a vestibule within CBRPD. Burns again fell to the ground in the presence of CBRPD officers Timothy Conboy ("Conboy") and Josh Albillar ("Albillar"). (Exhibit "B" Conboy Body Worn Camera 00:00:055-00:01:17)

6. The officers removed Burns' shoes and belt then placed him in a holding cell by himself and removed his handcuffs. (Exhibit "B" Conboy Body Worn Camera 00:01:40-00:4:34)

7. Albillar then contacted Bucks County Emergency Medical Services he was injured from his multiple falls and he believed Burns was "visibly highly intoxicated" (Exhibit "C" CBRPD Incident Report P.5)

8. Approximately Six minutes after leaving Burns in his cell, Albillar returned to conduct a Preliminary Breath Test ("PBT") (Exhibit "C" CBRPD Incident Report P.5) (Exhibit "D" Cell Video 18:48-22:00)

9. The PBT indicated that Burns had a Blood Alcohol Content of .264%.(Exhibit "C" CBRPD Incident Report P.5)

10. Albillar then left Burns alone in the cell for 16 minutes and awaited the arrival of paramedics. (Exhibit "D" Cell Video 22:00-38:27)

11. Albillar entered the cell with paramedics who inquired regarding his condition and whether it was appropriate to transport Burns to the hospital for treatment. (Exhibit "D" Cell Video 38:28—41:00)

12. While Albillar was in the cell with burns and the paramedics, Burns again lost his balance and fell backwards. (Exhibit "D" Cell Video 39:50-39:55)

13. After speaking with Burns for approximately two minutes and thirty seconds, Albillar and the paramedics walked out of the cell. (Exhibit "D" Cell Video 41:00-41:10)

14. Burns followed Albillar to the door opening and continued to speak to Albillar. (Exhibit "D" Cell Video 41:00-41:10)

15. Burns reached his hand out to stop the cell door from closing as he continued to speak to Albillar. (Exhibit "D" Cell Video 41:00-41:10)

16. Albillar first removed Burns' hand from the path of the door. He then grabbed Under his shoulder and threw him back with significant force.

17. Albillar stepped forward through the cell door and fully extended his arm as he threw Burns backwards. (Exhibit "D" Cell Video 41:08-41:11)

18. The force applied by Albillar caused Burns' feet to leave the ground and his body to fall straight back. (Exhibit "D" Cell Video 41:08-41:11) (Exhibit "E" Albillar Body Worn Camera 1:00-1:10)

19. The force applied by Albillar caused Burns' head to strike a concrete bench. (Exhibit

"D" Cell Video 41:08-41:11) (Exhibit "E" Albillar Body Worn Camera 1:00-1:10)

20. The force applied by Albillar caused a severe traumatic brain injury, right temporal bone fracture, subdural hematoma, and hemorrhagic contusion requiring the removal of a portion of his skull. (Exhibit "F" Moeller Report)

21. Immediately after applying force, Albillar stated " there you go". (Exhibit "E" Albillar Body Worn Camera 1:00-1:10)

22. Albillar concedes that he was never in fear for his safety while he was in the cell with Burns prior to applying injurious force to him. (Exhibit "G" Albillar Deposition 78:14-79:1)

23. Albillar concedes that Burns' safety was his responsibility at all times that he was police custody. (Exhibit "G" Albillar Deposition 17:6-17:10)

24. Albillar concedes that Burns' repeated falls were a factor that he was obligated to consider when determining what level of force is reasonable. (Exhibit "G" Albillar Deposition 22:2-22:19)

25. Albillar concedes that he was concerned that Burns' intoxication combined with his previous fall gave him concerns about Burns' ability to care for himself. (Exhibit "G" Albillar Deposition 76:12-76:22)

26. Albillar then claimed to paramedics that "I didn't see exactly how he fell" (Exhibit "E" Albillar Body Worn Camera 1:00-1:10)

27. Albillar then created a report claiming Burns "lost his balance and fell backwards" " (Exhibit "C" CBRPD Incident Report P.5)

28. Albilar continues to claim that his use of force was not the cause of Burns striking his head. (Exhibit "G" Albillar Deposition 81:11-81:20)

29. Plaintiff refers the court to the provided videos which speak for itself and respectfully asserts that no reasonable observer could determine that Albillar's use of force did not cause Burns to strike his head.

## III. LEGAL STANDARD

The court shall render summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

The summary judgment standard mirrors the standard for a directed verdict in that summary judgment should not be granted unless "there can be but one reasonable conclusion as to the verdict." *Anderson v. Liberty Lobby*, 477 U.S. 242, 250 (1986). The inquiry is in essence "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-252.

"The evidence of the non-movant is to be believed." *Id.* at 255. All inferences must be drawn, and all doubts resolved in the non-movant's favor. *Id.*; *United States v. Diebold, Inc.,* 369 U.S. 654, 655 (1962); *Gans v. Mundy*, 762 F.2d 338, 341 (3d Cir. 1985). "Credibility determinations, the weighing of evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of the judge." *Liberty Lobby*, 477 U.S. at 255.

## IV. ARGUMENT

To prevail on a § 1983 claim, Plaintiff must show, first, that he was deprived of a constitutional right and, second, that the alleged deprivation was committed by a person acting under color of state law." *Harvey v. Plains Twp. Police Dep't*, 635 F.3d 606, 609 (3d Cir. 2011). Acts of a local police officers in their official capacity will generally be found to have

occurred under color of state law and the Fourth Amendment recognizes the right of the people to be secure in their home from unreasonable seizures, *U.S. Const. amend. IV*. Thus, a claim of excessive force performed by a local police officer in violation of the Fourth Amendment may form the basis of a § 1983 claim. *Barna v. City of Perth Amboy*, 42 F.3d 809, 816 (3d Cir. 1994) *Reedy v. Evanson*, 615 F.3d 197 (3d Cir. 2010).

Excessive force claims are analyzed under the reasonableness standard. *ee Graham v. Connor*, 490 U.S. 386, 395 (1989). To determine objective reasonableness, the court must balance the 'nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake.'" *Santini v. Fuentes*, 795 F.3d 410, 417 (3d Cir. 2015). The reasonableness of force depends on "the totality of the circumstances," considered from "the perspective of a reasonable officer on the scene..." *Johnson v. City of Philadelphia*, 837 F.3d 343 (3d Cir. 2016) The court cannot apply this standard mechanically." *Graham*, at 397. Instead, it requires "careful attention to the facts and circumstances of each particular case." *Graham*, at 396. Those circumstances include "the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting". *Kingsley v. Hendrickson*, 576 U.S. 389, 400, 135 S. Ct. 2466, 192 L. Ed. 2d 416 (2015). The Third Circuit has noted additional relevant factors to consider, including whether the action occurs in the context of effectuating an arrest, whether a suspect is armed, and the number of persons with whom the officer must contend at one time. *Sharrar v. Felsing* 128 F3d. 810 (3rd Cir. 1997)

The Supreme Court established that a court should not rely on a party's version of events when it is "so utterly discredited by the record that no reasonable jury could have believed him". *Scott v. Harris*, 550 U.S. 372 (2007) In this matter, there is undisputed video evidence that shows Albillar violently throw Burns causing serious injury. The same video evidence show Albillar in the presence of Burns as he repeatedly demonstrates his physical vulnerability due to intoxication and instability. The court should therefore not rely upon Albillar's self-serving statements claims that Burns "lost his balance" and that his use of force did not cause Burns' injuries the video speaks for itself.

Additionally, the *Graham* and *Sharrar* factors favor Plaintiff. Albillar knew that Burns was unarmed because we see him search Burns on video. Burns was not a threat to escape or harm officers and he had never attempted to strike or otherwise harm the officers. Albilar concedes that he was not in fear his safety. The officers outnumbered Burns four to one. Burns was not actively resisting and never applied force or violence on Albillar. Finally, Burns' injuries are severe and life altering.

**CONCLUSION**

Plaintiff respectfully requests that this Honorable Court Grant Plaintiffs Motion for Summary Judgment and hold Officer Josh Albillar liable for the unconstitutional use of excessive force.

Respectfully Submitted,

*//s// Mark V. Maguire*
Mark V. Maguire, Esq.
John J. Coyle, Esq.
**MCELDREW PURTELL**
123 S. Broad St. Suite 2250
Philadelphia, PA 19109

Date: September 8, 2026

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **STEVEN BURNS, et al.** | : | |
| **Plaintiffs** | : | |
| **v.** | : | **Civil Action No. 2:24-cv-2690** |
| **CENTRAL BUCKS REGIONAL POLICE DEPARTMENT et al.,** | : | |
| **Defendants.** | : | |

## CERTIFICATE OF SERVICE

I hereby certify that I will make a true and correct copy of Plaintiff's Motion for Partial Summary Judgment available on the PACER ECF system which will send an electronic notice to all participating counsel of record.

*//s// Mark V. Maguire*
Mark V. Maguire, Esq.
MCELDREW PURTELL
123 S. Broad St. Suite 2250
Philadelphia, PA 19109

Date: September 8, 2026